# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FLOYD RICHARDSON, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 22-cv-2488 (APM)** |
| ) | |
| **FRANK BISIGNANO,**[1] ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Floyd Richardson, Jr. seeks reversal of the final decision by the Social Security Administration ("SSA" or the "Agency") denying his claim for disability insurance benefits and for supplemental security income payments.  Plaintiff alternatively seeks an order vacating and remanding his case to the SSA for further proceedings.  Pending before the court are Plaintiff's Motion for Judgment of Reversal, ECF No. 14, and Defendant's Motion for Judgment of Affirmance, ECF No. 17.  The court denies Plaintiff's motion, grants Defendant's motion, and affirms the SSA's decision.[2]

## II.    BACKGROUND

### A.    Statutory Background

To qualify for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, a claimant must prove that he has a disability that

---

[1] The court substitutes the current Commissioner of Social Security Frank Bisignano for Defendant Kilolo Kijakazi, the former Acting Commissioner.  *See* Fed. R. Civ. P. 25(d).

[2] The court apologizes to the parties for the length of time it has taken to issue this opinion.

renders him unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a).[3]  The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  A claimant must support his alleged impairment with "[o]bjective medical evidence" that is "established by medically acceptable clinical or laboratory diagnostic techniques." 42 U.S.C. § 423(d)(5)(A); *see id.* § 1382c(a)(3)(D).

The SSA has established a five-step sequential analysis for determining whether a person is disabled and entitled to disability benefits.  *See* 20 C.F.R. § 404.1520.  At step one, the applicant must establish that he is not presently engaged in "substantial gainful activity."  *Id.* § 404.1520(a)(4)(i).  At step two, he must show that he has a "severe medically determinable physical or mental impairment."  *Id.* § 404.1520(a)(4)(ii).  At step three, the claimant must demonstrate that his impairment meets or equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404 ("Listing of Impairments").  *Id.* § 404.1520(a)(4)(iii).  If his impairment is listed, then he is conclusively presumed disabled, and the inquiry ends.  *Id.* § 404.1520(d).

If the impairment is not listed, then before step four, the ALJ assesses the claimant's residual functional capacity ("RFC").  *Id.* § 404.1520(e).  The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," which means "8 hours a day, for 5 days a week, or an equivalent

---

[3] For ease, the court has omitted parallel citations to the Title XVI regulations, as the regulations governing Title XVI, which covers supplemental security income benefits, and Title II, which covers disability insurance, are "equivalent" for the court's purposes.  *Smith v. Berryhill*, 587 U.S. 471, 475 (2019).

work schedule." SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, at *1 (SSA July 2, 1996). In making this finding, the ALJ must consider all impairments, including those that are not considered severe. *Id.* at *5. At step four, based on the RFC, the claimant must show that his impairment prevents him from performing his "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). The burden of proof at each of the first four steps rests on the applicant. *See Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).

The burden shifts at step five. The Commissioner of Social Security ("Commissioner") must show that, based on the person's RFC, age, education, and work experience, he is able to perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *see also Butler*, 353 F.3d at 997. The Commissioner typically offers such evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's RFC and vocational factors. *See* 20 C.F.R. § 404.1566(e). If the applicant prevails at each step, then he is deemed disabled and qualifies for disability benefits. *See id.* § 404.1520(a)(4).

### B.    Plaintiff's Disability Claim

Plaintiff filed his applications for disability insurance and supplemental social security income benefits in the spring of 2019. Admin. Record, ECF No. 10 [hereinafter AR], at 219–31. He alleged disability starting on December 25, 2016, due to gout, gastritis, right knee arthritis, and the inability to walk or stand for long periods of time. AR 62. The state disability agency denied Plaintiff's claims initially and on reconsideration. AR 109–15, 118–24. Plaintiff then requested a hearing before an SSA administrative law judge ("ALJ") and submitted medical documentation. AR 125–26; *see generally* AR 350–1403 (Plaintiff's medical records).

        *1.*    *Hearing Testimony*

The ALJ held a hearing on May 21, 2021, at which both Plaintiff and an independent vocational expert, Dr. Charlotte G. Dixon, testified.  *See* AR 33–61; *see also* AR 340–41.  Plaintiff testified that he has a bachelor's degree and previously held jobs at offices entering data and performing general clerical work and at Nationals Park working retail, with his last employment in 2016.  AR 39–40.  Plaintiff's attorney stated that Plaintiff sought a disability determination based on his severe impairments of gout, arthritis, major depressive disorder, neuropathy in all extremities, cervical myopathy, and a stroke.  AR 40.  Plaintiff testified that he had a stroke in 2019 and underwent spinal cord surgery in 2020, he continues to take medication for gout and arthritis, and he receives treatment for mental health issues.  AR 41–43.

Plaintiff further stated that he suffered gout flare ups every morning, which result in severe pain and mobility limitations.  AR 50–51.  He is "in pain every morning [he] wake[s] up, . . . no matter how many pills [he] take[s]."  AR 50.  Additionally, Plaintiff stated that his joints on his right side give him issues due to his arthritis.  AR 52–53.  He also testified that, after the stroke, he experienced severe limitations to his movement and ability to get dressed, but he improved over time.  AR 43.  As a result of the 2020 spinal surgery, Plaintiff has a metal plate in his neck, which causes pinging in his right ear and occasional sharp neck pain.  AR 53.

As to limitations, Plaintiff testified that he must always be near a bathroom because of his medication.  AR 43.  He uses a prescribed cane otherwise he loses balance due to neuropathy.  AR 43–44.  With the cane, Plaintiff can walk to the bus stop, but experiences fatigue if he goes too far from his home.  AR 44.  Plaintiff further testified that he can stand for a maximum of four hours and sit for two or three hours before he needs to start moving.  AR 44–45.  He can lift up to five pounds.  AR 45.  He cannot bend, and general weakness affects his ability to do physical work.

AR 54. Plaintiff stated that with his neuropathy, he can "use [his] hands" but his "fingertips are numb." *Id.* He has trouble leaving his house two days a week because of pain and depression. AR 56.

Plaintiff acknowledged that he previously had an alcohol problem, but now drinks two or three times a week, typically two or three beers at a time. AR 45–46. As to his daily activities, he can bathe himself without the aid of others but must be careful moving in and out of the tub and can dress himself. AR 46–47. He cooks and prepares his own meals. AR 47. He is unable to clean his apartment due to balance issues, so he pays someone to do it. *Id.* However, he does laundry every two weeks, which involves ascending and descending three flights of stairs. *Id.* Plaintiff also testified that he can grocery shop, but he takes Uber so that someone can help him bring the bags to his second-floor apartment. *Id.* Plaintiff has not taken any trips since December 2016. AR 48.

Lastly, the ALJ heard from Dr. Dixon, the independent vocational expert. She identified Plaintiff's past relevant employment as a data entry clerk, which is semiskilled work with a sedentary exertional level, and a general clerk, which is also semiskilled work with a sedentary exertional level. AR 57; *see also* AR 26. The ALJ posed to Dr. Dixon the following hypothetical:

> Let's assume, please a hypothetical individual of the claimant's age and education with the past jobs that you identified, further assume that this person could perform the full range of sedentary work, except could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; never climb ropes, ladders, or scaffolds; this person would need to avoid concentrated exposure to hazards such as dangerous machinery, unprotected heights and parts; now would that person be able to perform any of the claimant's past work?

AR 58. Dr. Dixon responded that both of Plaintiff's previous positions are compatible with that hypothetical. *Id.* The ALJ also asked whether such jobs remained available if a person required a cane for ambulation, which Dr. Dixon affirmed. *Id.* When asked by Plaintiff's attorney whether

an individual could perform Plaintiff's past relevant work "if the hypothetical individual were only occasionally able to use his bilateral upper extremities for fine and gross manipulation [and] grasping," Dr. Dixon stated that he could not. AR 59. The ALJ pressed further on this issue, and Dr. Dixon testified that both past relevant jobs required "frequent handling and constant fingering." *Id.* Plaintiff's attorney also inquired about a hypothetical person who is consistently absent from work for two days a month, and who is off task or unproductive for 15% of the day or more. *Id.* Dr. Dixon testified that these limitations would preclude competitive employment. *Id.*

2.    *ALJ Findings and Conclusion*

On September 23, 2021, the ALJ held that Plaintiff was not entitled to benefits. AR 27. As to the first three steps of the five-step process, the ALJ concluded that Plaintiff: (1) "has not engaged in substantial gainful activity since December 25, 2016, the alleged onset date," AR 16 (citing 20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*); (2) "has the following severe impairments: degenerative disc disease, gout, status post stroke, arthritis, neuropathy, and substance use disorder," *id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)); and (3) "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," AR 18. At step two, the ALJ determined that Plaintiff's claimed gastrointestinal disorders and affective mood disorder were non-severe. AR 16. He found that Plaintiff's "medically determinable mental impairment of affective mood disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities[.]" AR 17. Plaintiff, however, exhibited "mild limitation[s]" in interacting with others and in concentrating, persisting or maintaining pace. *Id.*

Before step four, the ALJ concluded that Plaintiff "has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. [§§] 404.1567(a) and 416.967(a) except he could

6

occasionally climb ramps and stairs; balance, stoop, kneel, crouch and crawl," "could occasionally climb ropes, ladders, and scaffolds," and "must avoid concentrated exposure to hazards, such as dangerous machinery and unprotected heights." AR 18–19.  In general, sedentary work involves lifting objects up to 10 pounds and "occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).  "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties"—"[j]obs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

The ALJ explained that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms," even "account[ing] for the claimant's impairments in the exertional, postural, and environmental limitations contained in the residual functional capacity." AR 20.  Based on Plaintiff's RFC, the ALJ determined that Plaintiff was "capable of performing past relevant work as a data entry clerk and general clerk" and thus was not disabled at the fourth step. AR 26–27.  He also found, "in the alternative, that if [Plaintiff] had a more restrictive residual functional capacity that included [] additional limitations," such as "the requirement to use a cane for ambulation," "jobs would still remain available" and the "ultimate finding of nondisability[] would remain." AR 27.  Thus, the ALJ determined that "a finding of 'not disabled' is appropriate," even though "the claimant's additional limitations do not allow the claimant to perform the full range of sedentary work." *Id.*

## III.    STANDARD OF REVIEW

The court must uphold the Commissioner's determination "if it is supported by substantial evidence and is not tainted by an error of law." *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987); *see also* 42 U.S.C. § 405(g).  "Substantial evidence is 'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Butler*, 353 at 999 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted)). This "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Id.* (quoting *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365–66 (D.C. Cir. 2003)). Though this standard is "highly deferential to the agency fact finder," *Jeffries v. Astrue*, 723 F. Supp. 2d 185, 189 (D.D.C. 2010) (citation omitted), the ALJ must have "analyzed all evidence and [] sufficiently explained the weight he has given to obviously probative exhibits[.]" *Butler*, 353 F.3d at 999 (citation omitted).

## IV. DISCUSSION

Plaintiff asserts two primary errors. First, he argues that the ALJ erroneously assessed his RFC. Second, he asserts that the ALJ failed to properly evaluate his subjective complaints about the limiting nature of his symptoms. The court disagrees as to both.

### A. The ALJ's RFC Determination

Plaintiff contends that the finding of non-disability should be reversed or remanded to the SSA because the ALJ's RFC determination was not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ (1) failed to set forth a proper narrative discussion supporting the RFC determination, (2) failed to perform a proper function-by-function assessment, (3) failed to address pertinent evidence, and (4) failed to properly address the Plaintiff's non-severe mental impairment.

#### 1. *The ALJ's Narrative Discussion and Function-by-Function Assessment*

Social Security Ruling ("SSR") 96-8p defines RFC as "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect

his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. According to that ruling:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7. In sum, the narrative discussion requirement means that "[i]t is insufficient for the ALJ to merely list the claimant's medical history and then conclusively state the claimant's RFC[.]" *Williams v. Colvin*, 134 F. Supp. 3d 358, 364 (D.D.C. 2015). Instead, "the ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review.'" *Id.* (quoting *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006)).

SSR 96-8p also requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." 1996 WL 374184, at *3. This aspect of "[t]he RFC assessment must address both the remaining exertional and nonexertional capacities of the individual." *Id.* at *5. Exertional capacity addresses an individual's restrictions of physical strength, including his ability to sit, stand, walk, lift, carry, push, and pull. *Id.* (referring to these requirements as the "seven strength demands"). Nonexertional capacity considers an individual's ability to perform work-related functions that do not depend on physical strength, including postural activities like stooping and climbing, manipulative activities like reaching and handling, visual activities, communicative activities, and mental activities. *Id.* at *6. With regard

to mental activities, competitive work generally requires the ability to: "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting." *Id.* Non-exertional capacity also considers an individual's ability to tolerate environmental factors like extreme temperatures. *Id.* The "RFC must first identify the individual's functional limitations or restrictions" and then "the RFC [may] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id.* at *1.

The court disagrees with Plaintiff that the ALJ failed to include a proper narrative discussion or function-by-function assessment. Courts in this District do not require a rigid analysis of each function—the ALJ is only required to engage in "*consideration* of all the factors, not *enumeration* of all the factors." *Banks v. Astrue*, 537 F. Supp. 2d 75, 84 (D.D.C. 2008). In fact, Plaintiff's position that "the ALJ's opinion must include an analysis that addresses in writing each and every work-related function listed in SSR 96-8p . . . has been rejected." *Kim M. v. Kijakazi*, No. 20-cv-2072, 2021 WL 4033060, at *7–8 (D.D.C. Sept. 3, 2021). The ALJ need only "provide a thorough narrative discussion of the evidence of record regarding Plaintiff's ability to perform relevant work-related functions in areas in which plaintiff alleged limitation." *Davis v. Berryhill*, 272 F. Supp. 3d 154, 172 (D.D.C. 2017).

Here, the ALJ evaluated the record evidence, multiple consultative medical opinions, Plaintiff's daily activities, and subjective complaints to conclude that Plaintiff had a sedentary exertional capacity with additional limitations. AR 18–26. The ALJ acknowledged the definition of sedentary work as contained in 20 C.F.R. §§ 404.1567(a) and 416.967(a). AR 18. He then recounted Plaintiff's allegations concerning his disabling impairments. Specifically, the ALJ noted Plaintiff's claims concerning "his ability to lift, squat, bend, stand, reach, walk, kneel, climb stairs,

complete tasks, and use his hands." AR 19. He also recounted Plaintiff's testimony regarding these functional areas and his daily activities. *See, e.g., id.* ("He could walk with his cane to the bus stop. He could stand for about four hours. He could sit for two to three hours, but his body is sore when he tries to get up. He could lift five pounds."). The ALJ then acknowledged that some of the medical evidence in the case supported Plaintiff's functional limitations in these areas but found that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations." AR 20.

The ALJ thoroughly evaluated the medical evidence that both supported and conflicted with Plaintiff's statements concerning his functional limitations. For instance, he cited several physical examinations in the relevant time frame within normal limits, where Plaintiff presented with normal gait, good strength in and full use of his extremities, and a full range of motion. *See* AR 20–23; *see also Jamil D. v. Kijakazi*, No. 21-cv-464, 2022 WL 910334, at *10 (D.D.C. Mar. 29, 2022) (citing cases where similar evidence was "used to discount a claimant's assertions of disabling limitations"). The ALJ also pointed to several pieces of evidence suggesting that the disabling symptoms Plaintiff alleged were a result of acute intoxication or excessive alcohol use. *See* AR 20–23; *see, e.g., Talley v. Barnhart*, 113 Fed. App'x 185, 187 (8th Cir. 2004) (upholding ALJ's RFC assessment as supported by substantial evidence where the medical evidence showed that most of the plaintiff's health problems improved with detoxification treatment and cessation of drinking).

Importantly, the ALJ did not ignore evidence of Plaintiff's functional limitations. He "accounted for [Plaintiff's] impairments in the exertional, postural, and environmental limitations contained in the [RFC]." AR 20. This is most evident in his consideration of the various consultative medical examiners' opinions. The ALJ declined to give these medical opinions "any

specific evidentiary weight," because the record reflected *greater* limitations than the examiners determined. AR 24. For example, the state agency medical consultants opined that Plaintiff "is able to perform light work with a limitation to occasional postural activities" and avoidance of "concentrated exposure to hazards." AR 24. The ALJ agreed that the postural and environmental limitations were supported by the record but found that "the record support[ed] a greater degree of restriction and a sedentary exertional level." AR 24–25. The ALJ reached the same conclusion as to the examination done by Vashtina Ellison-Ruddock, N.P., the consultative medical examiner. She opined that "the claimant has moderate limitation in prolonged walking, standing, and climbing stairs." AR 25. The ALJ agreed that this opinion was "consistent with postural and environmental limitations," but that the record supported "a greater degree of restriction with a less than sedentary exertional level." *Id.*

The ALJ also "provided a thorough narrative discussion of the evidence of record regarding Plaintiff's abilities to perform relevant work-related functions in areas in which Plaintiff alleged limitation." *Davis*, 272 F. Supp. 3d at 172. Thus, contrary to Plaintiff's contention, the ALJ did not merely summarize the medical evidence and assign an RFC without evaluating his "abilities to sit, stand, walk, or lift." Pl.'s Mot. for Judgment of Reversal, ECF No. 14 [hereinafter Pl.'s Mot.], at 9. As to each of those functions, the ALJ evaluated and weighed the medical evidence, Plaintiff's own testimony, and the opinions of other evaluators. In particular, the ALJ highlighted how Plaintiff's activities of daily living—including his ability to cook and prepare meals, do laundry, go shopping, play ping pong, read, handle money, and engage online—were consistent with sedentary work with limitations. AR 24. Also, as discussed, he explained how the examiners' opinions were consistent with his postural- and environmental-limitation findings but that "the record supports a greater degree of restriction and a sedentary exertional level," identifying the

medical evidence that supported the more restrictive limitations.  AR 24–25.  To be sure, portions of the opinion are difficult to follow, but the ALJ built the requisite "logical bridge from the evidence to his conclusion."  *Contreras v. Comm'r of Soc. Sec.*, 239 F. Supp. 3d 203, 207 (D.D.C. 2017) (internal quotation marks and citation omitted).

### 2.    *Evaluation of Pertinent Evidence*

Plaintiff faults the ALJ for failing to consider the following evidence from the state consultive medical examiner, Ellison-Ruddock, dated December 31, 2020:

> GENERAL APPEARANCE, GAIT, STATION: The claimant appeared to be in no acute distress.  He walks very slowly with a limp with the cane.  He is unable to walk on heels and toes without difficulty.  He is unable to squat.  Stance normal.  Used assistive device, he presented with his cane today.  He loses his balance without his cane.  Needed no help changing for exam or getting on and off exam table.  Able to rise from chair without difficulty.

AR 1158; *see* Pl.'s Mot. at 9.  According to Plaintiff, this examination "revealed that the Plaintiff walked very slowly with a limp and a cane," but the ALJ did not address Plaintiff's need for a cane to stand, walk, or balance in the RFC.  Pl.'s Mot. at 9–10.

Not so.  The ALJ wrote that Plaintiff "used an assistive device and presented with a cane," "reported" to Ellison-Ruddock "that he loses his balance without his cane," and that Ellison-Ruddock's examination "showed that the claimant walked very slowly with a limp and a cane." AR 23, 25.  As further explained above and below, *see* Section III.b, the ALJ also considered evidence where Plaintiff's gait was unimpaired at times, and that past instances of falls and balance issues were often related to intoxication.  AR 20–24.  Also, the ALJ incorporated into the hypothetical he posed to the independent vocational expert Plaintiff's need for a cane for ambulation.  AR 27; *see also* AR 58.  In the end, he concluded that even if Plaintiff "had a more restrictive residual functional capacity that included" this limitation, his "ultimate finding of

nondisability[] would remain" as jobs remain open to Plaintiff.  *Id.*  And, regarding Plaintiff's standing and walking abilities generally, the ALJ noted Plaintiff's testimony that he "could walk with his cane to the bus stop" and "could stand for about four hours."  AR 19.  Thus, the ALJ's narrative discussion reflects his consideration of Ellison-Ruddock's observation about Plaintiff's use of a cane.

The court also agrees with Defendant that Plaintiff has not shown harm from the ALJ's failure to include a specific provision for a cane in his RFC.  An error is harmless "when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Davis*, 272 F. Supp. 3d at 180 (internal quotation marks and citations omitted).  As discussed, the ALJ concluded that even if Plaintiff needed a cane to ambulate, his overall finding of nondisability would remain.  AR 27.  Plaintiff responds that this finding only extends to his use of a cane for *ambulation*, and Ellison-Ruddock noted that Plaintiff required a cane for *balance* as well.  Pl.'s Opp'n to Def.'s Mot. & Reply, ECF No. 20 [hereinafter Pl.'s Opp'n], at 4.  He also cites to SSR 96-9p, *Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*, which states that, in the context of *unskilled sedentary work*, "the occupational base for an individual who must use" an assistive device like a cane "for balance . . . may be significantly eroded."  1996 WL 374185, at *7 (SSA July 2, 1996).  But the ALJ determined that Plaintiff could perform past relevant *semiskilled* work, not unskilled sedentary work, and in the case of semiskilled work the occupational "base may be broadened by the addition of specific . . . semiskilled occupations that an individual with an RFC limited to sedentary work can perform[.]"  *Id.* at *4.  But even so, the court's review of the Dictionary of Occupational Titles' descriptions for data entry clerk and general clerk establishes that neither of them calls for any balance requirements.  *See* DOT

14

203.582-054 (G.P.O.), 1991 WL 671700 (balance reported as "not present" for data entry clerk); DOT 209.562-010 (G.P.O.), 1991 WL 671792 (balance reported as "not present" for general clerk); *see also Davis*, 272 F. Supp. 3d at 180.

> 3.    *The ALJ's Failure to Adequately Address the Plaintiff's Non-Severe Impairments*

Plaintiff next contends that the ALJ did not properly address his non-severe mental impairment in determining his RFC. *See* Pl.'s Mot. at 10–11. Recall that at the second step, the ALJ determined that Plaintiff's claimed gastrointestinal disorders and affective mood disorder were non-severe. AR 16. As to Plaintiff's affective mood disorder, the ALJ found that it was non-severe because any limitations it causes were "mild," and the "evidence does not indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities." AR 18. He did find, however, that Plaintiff exhibited a "mild limitation" in interacting with others and in concentrating, persisting, or maintaining pace. AR 17; *see also* 20 C.F.R. § 404.1520a(c)(3) (evaluating mental impairments in "four broad functional areas: "[u]understand[ing], remember[ing], or apply[ing] information; interact[ing] with others; concentrat[ing], persist[ing], or maintain[ing] pace; and adapt[ing] or manag[ing] oneself.")

SSR 96-8p provides that "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" 1996 WL 374184, at *5. Courts in this District thus have remanded decisions that evince no consideration of non-severe limitations in assessing a claimant's RFC. *See Cheryl S. v. Kijakazi*, No. 18-cv-1379, 2022 WL 21758804, at *11 (D.D.C. May 4, 2022), *report and recommendation adopted*, No. 18-cv-1379, 2022 WL 21758803 (D.D.C. May 20, 2022); *Katrina M. v. O'Malley*, 752 F. Supp. 3d 1, 11–13 (D.D.C. 2024). However, where an ALJ "specifically address[es]" a

plaintiff's non-severe limitation in formulating the RFC, no remand is required.  *See Judea L. v. Kijakazi*, No. 22-cv-1879, 2023 WL 6065023, at *11 & n.13 (D.D.C. Sept. 18, 2023).

This case is more like *Judea L.* than *Cheryl S.* or *Katrina M.*  The ALJ acknowledged that "[t]he mental residual functional capacity assessment . . . requires a more detailed assessment" than his finding at step two.  AR 18.  And in recounting the medical evidence, the ALJ discussed Plaintiff's mood disorder.  *See, e.g.,* AR 20–21 (discussing Plaintiff's treatment programs and counseling).  The ALJ's consideration of Plaintiff's mild mental limitations is further evidenced by his rejection of the opinion of Nancy Heiser, Ph.D, the state agency psychological consultant, as "non-persuasive." *See* AR 25.  Heiser found that Plaintiff had been diagnosed with a mood disorder but concluded that there was insufficient evidence in the record to evaluate its effect on Plaintiff's mental functioning.  *See* AR 87–88.  The ALJ noted that Heiser's opinion was "not consistent with the record" because "the record supports a greater degree of restriction, with mild limitations in interacting with others and in concentration, persistence, and maintaining pace." AR 25.  And further, the ALJ pointed to instances of "withdrawn" behavior, "a history of chronic impulsive behavior" and "symptoms of hypervigilance and poor impulse control."  *Id.*

The ALJ then explained why those limitations did not warrant any added functional limitations when weighing Plaintiff's Global Assessment of Functioning ("GAF") score. *See* AR 25–26.  A "GAF score is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning."  *Williams*, 134 F. Supp. 3d at 365 (internal quotation marks and citation omitted).  Plaintiff was assigned a GAF score of 60, "indicating moderate symptoms or limitations in functioning."  AR 25.  The ALJ noted that "[a]lthough a GAF score can offer some evidence regarding the severity of the claimant's mental impairment, it is not dispositive on the issue."  AR 25–26; *see* AR 26 (noting that the SSA

Commissioner has declined to endorse GAF scores in social security cases). Thus, the ALJ found that "the longitudinal medical record shows this condition," *i.e.*, Plaintiff's mood disorder, "did not cause any ongoing functional limitations" and "no aggressive treatment was recommended or anticipated for this condition." AR 26. This was supported by medical evidence and further discussed in the ALJ's analysis of that evidence. *See* AR 20–23.

Additionally, any error in failing to consider his non-severe mental impairment was harmless. "Where an ALJ's determination that an impairment is non-severe at step two is supported by substantial evidence . . . [,] a failure to explicitly discuss such an impairment in formulating the [RFC] does not generally require remand because the step two finding demonstrates that the impairment 'did not significantly limit Plaintiff's ability to do basic work activities' and an ALJ '[is] not required to include a *non*-significant limitation in stating Plaintiff's [RFC].'" *Judea L.*, 2023 WL 6065023, at *11 (quoting *Honcoop v. Barnhart*, 87 Fed. App'x 627, 629 (9th Cir. 2004)). The ALJ in this case concluded at step two that "the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities," even considering mild limitations in interacting with others and concentrating, persisting, or maintaining pace. AR 18. This finding is supported by substantial evidence. AR 17 (discussing evidence of normal speech, motor activity, immediate and recent memory, thought process and content, and cognition). Ultimately, the ALJ *did* acknowledge and discuss Plaintiff's non-severe mental impairments in the RFC but declined to impose additional functional limitations.

### B.    Plaintiff's Subjective Complaints

Plaintiff's other main argument is that the ALJ failed to properly evaluate his subjective complaints regarding his symptoms. *See* Pl.'s Mot. at 11–16. The ALJ determined that Plaintiff's

"medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" AR 24.  Plaintiff's chief concerns are that the ALJ (1) disregarded his testimony regarding his need to use a cane by selectively citing medical evidence; (2) improperly relied solely on "objective medical evidence" to conclude that Plaintiff's symptoms are not as limiting as he claimed; and (3) mistakenly considered Plaintiff's daily activities to discount his testimony regarding the limiting nature of his symptoms.  *See* Pl.'s Mot. at 11–15.

In evaluating a claimant's testimony about his alleged symptoms, the claimant must first present "medical signs or laboratory findings" evidencing a "medically determinable impairment that could reasonably be expected to produce" the claimant's pain or other symptoms. *See* 20 C.F.R. § 404.1529(b).  Once the claimant meets the threshold obligation, the ALJ considers the intensity and persistence of the claimant's pain or other symptoms, and the extent to which it affects his ability to work.  *Id.* § 404.1529(c).  At this stage, the ALJ considers not only objective medical evidence, but also evidence such as the claimant's daily activities; location, duration, frequency and intensity of his symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medications; and other treatments received.  *Id.* § 404.1529(c)(2)–(3).

Though an ALJ cannot "reject a claimant's statements about pain 'solely because they are not substantiated by objective medical evidence,' the ALJ may consider 'whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence.'"  *McCormick v. Saul*, No. 18-cv-1704, 2021 WL 2634732, at *9 (D.D.C. June 25, 2021) (quoting *Butler*, 353 F.3d at 1004–05).  "[T]he ALJ's

decision 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.'" *Washington v. Saul*, No. 20-cv-662, 2021 WL 2514691, at *7 (D.D.C. June 18, 2021) (quoting SSR 96-7p, *Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, 1996 WL 374186, at *4 (SSA July 2, 1996)); *see also* SSR 16-3p, *Evaluation of Symptoms in Disability Claims*, 2017 WL 5180304, at *10 (SSA Oct. 25, 2017) (superseding SSR 96-7p) (similar).  Generally, "[i]n evaluating complaints of pain, an [ALJ] may properly consider the claimant's credibility," and his "assessment of credibility is entitled to great weight and deference, since he had the opportunity to observe the witness's demeanor." *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 21 (D.D.C. 2009) (quoting *Infantado v. Astrue*, 263 Fed. App'x 469, 475–76 (6th Cir. 2008)).

As to Plaintiff's first assignment of error, the ALJ found that "[w]hile the claimant testified that he uses a cane and that a cane was prescribed to him in February 2020[,] examinations show that he ambulates with a steady gait." AR 24.  The ALJ also described how medical records showed that several falls were attributed to Plaintiff's alcohol consumption.  *Id.*  The evidence cited to support these findings both predated and postdated February 2020.  *See, e.g.,* AR 420 (Exhibit 5F at 11) (January 2019 record); *see* also AR 24 (citing this exhibit).  For example, in August 2020, medical records reported that he "had FROM [full range of motion] and was able to ambulate with a steady gait."  AR 1100 (Exhibit 16F at 10); *see also* AR 24 (citing this exhibit).  In March 2020 and August 2020, intoxication was reported alongside various falls that Plaintiff suffered.  AR 1063 (Exhibit 15F at 64); AR 1098 (Exhibit 16F at 8); *see also* AR 24 (citing these exhibits).

Plaintiff faults the ALJ for "rel[ying] upon but a single instance where the Plaintiff had a steady gait subsequent to February[] 2020 to disregard his subjective complaints, as well as his need to utilize a cane." Pl.'s Opp'n at 6. Exaggeration aside, medical records show that, in August 2020, Plaintiff was noted to use a cane at baseline. AR 1058; *see also* AR 1092 (September 2020 report that "[p]atient able to ambulate with moderately antalgic gait with assistance of a cane"). The findings of these medical records are not mentioned either in the discussion of Plaintiff's medical evidence or in the ALJ's evaluations of Plaintiff's subjective complaints. But even with that said, it was still within the ALJ's authority to weigh Plaintiff's statements against other evidence the ALJ cited. These include aggravating and mitigating factors such as Plaintiff's alcohol abuse and his inconsistent statements regarding that alcohol abuse; his daily activities; and that Plaintiff was not always compliant with his prescribed medication regimen. *See* AR 24; *see also* 20 C.F.R. § 404.1529(c)(2)–(3) (in addition to objective medical evidence as a relevant consideration, other considerations include daily activities; location, duration, frequency, and intensity of symptoms; precipitating and aggravating factors; effectiveness of medication). Though "contradictory evidence may exist" in the record, "credibility determinations are for the factfinder who hears the testimony[,]" and this court will not redetermine the ALJ's articulated findings regarding Plaintiff's alleged symptoms. *Brown v. Bowen*, 794 F.2d 703, 706 (D.C. Cir. 1986); *see Grant v. Astrue*, 857 F. Supp. 2d 146, 156 (D.D.C. 2012) (observing that a reviewing court must defer to the ALJ's assessment of a claimant's subjective reports of his symptoms and intervene only where an ALJ "fails to articulate a rational explanation for his or her finding[s]").

The court also disagrees with plaintiff's assertion that the ALJ relied only on objective medical evidence to reject his symptoms. *See* Pl.'s Mot. at 13. Under SSR 16-3p, an ALJ "will not disregard an individual's statements about the intensity, persistence, and limiting effects of

symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."  SSR 16-3p, 2017 WL 5180304, at *5. Even so, an ALJ "must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record."  *Id.*  The ALJ did state that the "objective medical evidence does not show that the claimant's symptoms are as limiting as he alleges."  AR 24.  However, as described above, the ALJ did not discount Plaintiff's subjective complaints based solely on inconsistencies with objective evidence, but rather on other record evidence, including inconsistent reporting on alcohol consumption, AR 24, and his daily living activities, AR 24, 26 (stating that "the claimant's reported activities of daily living . . . contradict his allegations").

Lastly, Plaintiff contests the ALJ's conclusion that Plaintiff "described daily activities that are inconsistent with the claimant's allegations of disabling symptoms and limitations."  AR 24. Generally, "[a] claimant's participation in the activities of daily living will not rebut his or her subjective statements of pain or impairment unless there is proof that the claimant engaged in those activities for sustained periods of time comparable to those required to hold a sedentary job." *Higgins v. Saul*, No. 16-cv-27, 2019 WL 4418681, at *11 (D.D.C. Sept. 16, 2019) (citations omitted).  But an ALJ may "use[] Plaintiff's concessions concerning [his] daily activities, along with a constellation of other evidence, to discredit [his] claims that [his] impairments are so severe as to be disabling."  *Laura A. v. Kijakazi*, No. 21-cv-45, 2022 WL 3644810, at *16 (D.D.C. Aug. 24, 2022).  Here, the ALJ did specify time periods of various daily activities consistent with sedentary work.  For instance, the ALJ noted Plaintiff's own testimony that he "could stand for about four hours," he could "sit for two to three hours," and "he uses the stairs five days per week" to get to his second-floor apartment.  AR 19.

The ALJ also did not equate Plaintiff's limited daily activities with his ability to perform sedentary work. Instead, he cited those activities, along with others, to "discredit" Plaintiff's testimony of his symptoms in light of objective medical evidence. *See* AR 24. And elsewhere, the ALJ acknowledged the "limited nature of Plaintiff's ability to perform [his] daily activities." *Colter v. Kijakazi*, No. 20-cv-632, 2022 WL 715218, at *14 (D.D.C. Mar. 10, 2022); *see* AR 19. Because the ALJ "did not rely solely on the discrepancies between Plaintiff's testimony and [his] daily activities in concluding that [his] symptoms were not disabling," *Laura A.*, 2022 WL 3644810, at *17, the court does not find error with his analysis.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment of Reversal, ECF No. 14, is denied, and Defendant's Motion for Judgment of Affirmance, ECF No. 17, is granted. A final, appealable order accompanies this Memorandum Opinion.

Dated: July 18, 2025

Amit P. Mehta
United States District Judge